**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

ERNEST GALLEGOS,

      Petitioner,

v.                                                                                    No. CIV 10-0372 JB/KBM

ERASMO BRAVO, Warden,
ATTORNEY GENERAL OF THE STATE
NEW MEXICO,

      Respondents.

**MEMORANDUM OPINION AND ORDER ADOPTING MAGISTRATE JUDGE'S PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

**THIS MATTER** comes before the Court on the Magistrate Judge's Proposed Findings and Recommended Disposition, filed March 7, 2011 (Doc. 15). Petitioner Ernest Gallegos filed timely objections that reiterate the same phrase over and over:

> Petitioner objects to this proposed dismissal on the grounds that applicable law & applications thereof have not been followed and that his petition has been prejudice[d] through purposely removing pieces of the record proper. That "AEDPA" standards are a mixed question of law & facts that can only be f[e]rreted out in an evidentiary hearing before the Court.

Petitioners [sic] Objections to Proposed Findings and Recommended Disposition, filed March 21, 2011 (Doc. 16).

"'The filing of objections to a magistrate's report enables the district judge to focus attention on those issues -- factual and legal -- that are at the heart of the parties' dispute.'" United States v. One Parcel of Real Property, With Buildings, Appurtenances, Improvements, and Contents, Known as: 2121 East 30th Street, Tulsa, Oklahoma, 73 F.3d 1057, 1059 (10th Cir. 1996)("One Parcel")(quoting Thomas v. Arn, 474 U.S. 140, 147 (1985)). As the United States Court of Appeals

for the Tenth Circuit has noted, "the filing of objections advances the interests that underlie the Magistrate's Act, including judicial efficiency." One Parcel, 73 F.3d at 1059 (citing Niehaus v. Kansas Bar Ass'n, 793 F.2d 1159, 1165 (10th Cir. 1986); United States v. Walters, 638 F.2d 947, 950 (6th Cir. 1981)).

"To further advance the policies behind the Magistrate's Act, [the Tenth Circuit], like numerous other circuits, have adopted 'a firm waiver rule' that 'provides that the failure to make timely objections to the magistrate's findings or recommendations waives appellate review of both factual and legal questions.'" One Parcel, 73 F.3d at 1059 (citations omitted). In One Parcel, the Tenth Circuit, in accord with courts of appeals, expanded the waiver rule to cover objections that are timely but too general. See One Parcel, 73 F.3d at 1060 ("[O]nly an objection that is sufficiently specific to focus the district court's attention on the factual and legal issues that are truly in dispute will advance the policies behind the Magistrate's Act that led us to adopt a waiver rule in the first instance.").

The Supreme Court of the United States -- in the course of approving the United States Court of Appeals for the Sixth Circuit's use of the waiver rule -- has noted:

> It does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a de novo or any other standard, when neither party objects to those findings. The House and Senate Reports accompanying the 1976 amendments do not expressly consider what sort of review the district court should perform when no party objects to the magistrate's report. See S.Rep. No. 94-625, pp. 9-10 (1976) (hereafter Senate Report); H.R.Rep. No. 94-1609, p. 11 (1976), U.S. Code Cong. & Admin. News 1976, p. 6162 (hereafter House Report). There is nothing in those Reports, however, that demonstrates an intent to require the district court to give any more consideration to the magistrate's report than the court considers appropriate. Moreover, the Subcommittee that drafted and held hearings on the 1976 amendments had before it the guidelines of the Administrative Office of the United States Courts concerning the efficient use of magistrates. Those guidelines recommended to the district courts that "[w]here a magistrate makes a finding or ruling on a motion or an issue, his determination should become that of the district court, unless specific objection is filed within a

>   reasonable time." See Jurisdiction of United States Magistrates, Hearings on S. 1283 before the Subcommittee on Improvements in Judicial Machinery of the Senate Committee on the Judiciary, 94th Cong., 1st Sess., 24 (1975) (emphasis added) (hereafter Senate Hearings).  The Committee also heard Judge Metzner of the Southern District of New York, the chairman of a Judicial Conference Committee on the administration of the magistrate system, testify that he personally followed that practice. See id., at 11 ("If any objections come in, . . . I review [the record] and decide it.  If no objections come in, I merely sign the magistrate's order").  The Judicial Conference of the United States, which supported the de novo standard of review eventually incorporated in § 636(b)(1)(C), opined that in most instances no party would object to the magistrate's recommendation, and the litigation would terminate with the judge's adoption of the magistrate's report. See Senate Hearings, at 35, 37.  Congress apparently assumed, therefore, that any party who was dissatisfied for any reason with the magistrate's report would file objections, and those objections would trigger district court review.  There is no indication that Congress, in enacting § 636(b)(1)(C), intended to require a district judge to review a magistrate's report to which no objections are filed.  It did not preclude treating the failure to object as a procedural default, waiving the right to further consideration of any sort. We thus find nothing in the statute or the legislative history that convinces us that Congress intended to forbid a rule such as the one adopted by the Sixth Circuit.

Thomas v. Arn, 474 U.S. at 151-52 (footnotes omitted).

The Tenth Circuit also noted, "however, that '[t]he waiver rule as a procedural bar need not be applied when the interests of justice so dictate.'"  One Parcel, 73 F.3d at 1060 (quoting Moore v. United States, 950 F.2d 656, 659 (10th Cir. 1991)("We join those circuits that have declined to apply the waiver rule to a pro se litigant's failure to object when the magistrate's order does not apprise the pro se litigant of the consequences of a failure to object to findings and recommendations."  (citations omitted))).  Cf. Thomas v. Arn, 474 U.S. at 154 (noting that, while "[a]ny party that desires plenary consideration by the Article III judge of any issue need only ask," a failure to object "does not preclude further review by the district judge, sua sponte or at the request of a party, under a de novo or any other standard").  In One Parcel, the Tenth Circuit noted that the district judge had decided *sua sponte* to conduct a de-novo review despite the lack of specificity in the objections, but the Tenth Circuit held that it would deem the issues waived on appeal because

it would advance the interests underlying the waiver rule. See 73 F.3d at 1060-61 (citing cases from other circuits where district court elected to address merits despite potential application of waiver rule, but circuit court opted to enforce waiver rule).

A general objection such as Gallegos' objections waives appellate review. In Price v. Reid, 246 F. App'x 566 (10th Cir. 2007), the Tenth Circuit stated:

> [R]ather than identify any issue of law or fact which he contends was erroneously handled by the magistrate judge, Mr. Price devoted the bulk of his filings in both matters to inveighing against the judges handling his matters, seeking an end to the 'corruption' of the courts, a change of venue to review his claims, and the appointment of a special judge to handle his claims. Even viewing these *pro se* pleadings with the generosity that is their due, we do not see how they come close to satisfying our requirement that an objection to a magistrate judge's report be made with specificity.

246 F. App'x at 569. As in Price v. Reid, where the Tenth Circuit found that Price did not make objections with specificity when he "plainly registered his dissatisfaction with the magistrate judge's recommendation," but did not identify issues of law or fact which he contended were erroneously handled, see 246 F. App'x at 569, in this case, the Court finds that Gallegos did not make his objections with specificity when he objected to the proposed dismissal on the grounds that the Honorable Karen B. Molzen, United States Magistrate Judge, did not follow applicable law and applications of the law and that his petition was prejudiced by purposeful removal of parts of the record, but did not identify issues of law and fact which he contended Judge Molzen erroneously handled. Gallegos' failure to make specific objections waived appellate review, both by the Tenth Circuit and the district court. See One Parcel, 73 F.3d at 1060 ("[O]nly an objection that is sufficiently specific to focus the district court's attention on the factual and legal issues that are truly in dispute will advance the policies behind the Magistrate's Act that led us to adopt a waiver rule in the first instance."). The Court cannot say that "the interests of justice so dictate" that the waiver

rule should not be applied as a procedural bar, because Gallegos received the PFRD and made only general objections.  One Parcel, 73 F.3d at 1060 (citations and internal quotation marks omitted). See Wirsching v. Colorado, 360 F.3d 1191, 1197 (10th Cir. 2004)(finding ends of justice warranted considering pro-se prisoner's objections, because his allegation that he did not receive the magistrate's report and recommendation was facially plausible, and issues of considerable import were involved); Hill v. Poppell, 37 F. App'x 384, 385 (10th Cir. 2002)(finding ends of justice warranted considering objections of pro-se prisoner's who "did not object to the magistrate judge's report and recommendation because he did not receive a copy of it through the prison mail system"); Moore v. United States, 950 F.2d at 659 ("We join those circuits that have declined to apply the waiver rule to a pro se litigant's failure to object when the magistrate's order does not apprise the pro se litigant of the consequences of a failure to object to findings and recommendations." (citations omitted)).

Gallegos has not properly objected.  He has thus waived his right to have the Court review his objections.  Accordingly, the Court overrules his objections.

Moreover, the Court has considered the general objections *de novo*, and finds that they do not have a sound basis in the law or the facts of this case.  In Garcia v. City of Albuquerque, 232 F.3d 760 (10th Cir. 2000), the Tenth Circuit stated:

> [N]either 28 U.S.C. § 636(b)(1) nor Fed. R. Civ. P. 72(b) requires the district court to make any specific findings; the district court must merely conduct a *de novo* review of the record . . . . [A]lthough the district court's decision is terse, this is insufficient to demonstrate that the court failed to review the magistrate's recommendation *de novo*.

232 F.3d at 766-67.  See Slack v. Jones, 348 F. App'x 361, 363 (10th Cir. 2009)("These pleadings are vague . . . . [T]he district court's *de novo* adjudication does not require us to address Mr. Slack's claims.")(quoting In re Key Energy Res. Inc., 230 F.3d 1197, 1201, n.3 (10th Cir. 2000)("[E]ven

had the district court performed the *de novo* review . . . that fact would not preclude application of the waiver rule."), cert. denied, 130 S. Ct. 2067 (2010)).

Finally, while Gallegos has waived his right to have the Court review the PFRD and the Court's de novo review has not indicated any error, the Court has nonetheless carefully reviewed the PFRD and the briefs on the Petition Under 28 U.S.C. § 2254 -- Habeas Corpus by a Person in State Custody. Applying the interests-of-justice standard, the Court does not see any ruling of Judge Molzen that counsels that the Court should set her PFRD aside. Instead, the interests-of-justice standard suggests that the Court should not substitute its judgment in these circumstances and preclude an application of the waiver rule.

The Court adopts Judge Molzen's finding that, to the extent Gallegos is raising faulty grand jury instructions as an independent basis for habeas relief, the claim fails. Additionally, the Court recognizes that "indictment by grand jury is not part of the due process of law guaranteed to state criminal defendants by the Fourteenth Amendment." Branzburg v. Hayes, 408 U.S. 665, 688 n.25 (1972); Davis v. Mantello, 42 F. App'x 488, 490 (2d Cir. 2002)("Claims of deficiencies in state grand jury proceedings are not cognizable in a habeas corpus proceeding in federal court." (citations omitted)); Clanton v. Cooper, 129 F.3d 1147, 1155 (10th Cir. 1997)(noting that the Fifth Amendment right to grand jury indictment has never been 'incorporated' via the Fourteenth Amendment as a substantive restriction on state criminal procedure"); Pena v. Fischer, No. 00 Civ. 5984 HBMHD, 2003 WL 1990331, at *8 (S.D.N.Y. Apr. 30, 2003)("[C]laims regarding state grand jury proceedings raise no federal constitutional issues."(citing Fields v. Soloff, 920 F.2d 1114, 1118 (2d Cir. 1990)(stating that there is no federal right to a grand jury in a state criminal proceeding, because the Fifth Amendment right to grand jury was not incorporated by the Fourteenth Amendment)). As Judge Molzen recognized, federal courts hold that "alleged defects in grand jury

instructions or procedures are not cognizable in federal habeas." PFRD at 7. As the Tenth Circuit stated in <u>Tisthammer v. Williams</u>, 49 F. App'x 757 (10th Cir. 2002)

> We begin by noting that Tisthammer does not cite a single case granting post-conviction relief based on a claim the petitioner was shackled during grand jury proceedings. The opinion of the Supreme Court in <u>United States v. Mechanik</u>, 475 U.S. 66, 72-73 . . . discussing at length the substantial societal costs attendant to vacating an otherwise valid conviction based solely on violations of the Federal Rules of Criminal Procedure at the grand jury stage, most likely demonstrates why there are no such cases. As was true in <u>Mechanik</u>, the jury's finding that Tisthammer was guilty beyond a reasonable doubt alleviates the concern that the grand jury's finding of probable cause to charge was tainted by the shackling.

49 F. App'x at 765.

The Court also adopts Judge Molzen's finding that Gallegos' freestanding claim of actual innocence is not cognizable. As Judge Molzen recognized, to this date, neither the Supreme Court nor the Tenth Circuit has held that a freestanding claim of actual innocence can be the basis for federal habeas relief. <u>See</u> PFRD at 9. The Supreme Court's decisions do not definitively resolve the issue, and cases in the Tenth Circuit take the view that such claims are not recognized. <u>See</u> <u>LaFevers v. Gibson</u>, 238 F.3d 1263, 1265 n.4 (10th Cir. 2001)("Furthermore, an assertion of actual innocence, although operating as a potential pathway for reaching otherwise defaulted constitutional claims, does not, standing alone, support the granting of the writ of habeas corpus." (citing <u>Herrera v. Collins</u>, 506 U.S. 390, 400 (1993)("Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding."); <u>Herrera v. Collins</u>, 506 U.S. at 401 ("Few rulings would be more disruptive of our federal system than to provide for federal habeas review of freestanding claims of actual innocence."); <u>Sellers v. Ward</u>, 135 F.3d 1333, 1338-39 (10th Cir. 1998)); <u>Dombos v. Janeka</u>, 09-CV-0200 JB-GBW, <u>Proposed Findings and Recommended Disposition</u> at 30-32, filed October 25, 2010 (Doc.

104)(stating that the Supreme Court has never held that a free-standing claim of actual innocence is cognizable under habeas corpus).

The Court adopts Judge Molzen's finding that Gallegos cannot secure federal habeas relief on the aspect of his ineffective-assistance-of-counsel claim regarding his counsel's failure "to object to the failure to correctly instruct the jury concerning double jeopardy." Petition under 28 U.S.C. § 2254 -- Habeas Corpus by a Person in State Custody at 21, filed April 15, 2010 (Doc. 1)("Petition"). In his Petition, Gallegos stated:

> Without the correct jury instructions, the Petitioner was deprived of jury fact finding as to what felony is the predicate act for felony murder. This would also identify what felony could not receive a separate sentence. Had counsel objected and proffered the correct instructions, the jury would have decided the facts of the case.

Petition at 21.

Courts apply a two-part test described in Strickland v. Washington, 466 U.S. 668 (1984), to ineffective-assistance-of-counsel claims. See United States v. Angelos, 2011 WL 1126562, at *2 (10th Cir. 2011). "Under Strickland, [courts] first ask whether counsel's representation 'fell below an objective standard of reasonableness.' [They] then ask whether 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" United States v. Angelos, No. 09–4224, 2011 WL 1126562, at *2 (citing Strickland v. Washington, 466 U.S. at 687-88, 694). The Supreme Court has emphasized that the pivotal question in reviewing ineffective-assistance-of-counsel claims under 28 U.S.C. § 2254(d) "is whether the state court's application of the Strickland standard was unreasonable. This is different from asking whether defense counsel's performance fell below Strickland's standard." Harrington v. Richter, 131 S. Ct. 770, 785 (2011). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's

decision." Harrington v. Richter, 131 S. Ct. at 786 (citation omitted).  See Harrington v. Richter, 131 S. Ct. at 788 ("The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.").

Gallegos' claim regarding jury instructions is founded in the argument that, without the instructions, the jury did not identify the predicate felony which could not receive a separate sentence.  The Court is not aware of what a jury instruction regarding double jeopardy would look like and could not find an example of such an instruction.  The Supreme Court of the United States has stated: "It is well established that when a jury has no sentencing function, it should be admonished to "reach its verdict without regard to what sentence might be imposed."  Shannon v. United States, 512 U.S. 573, 579 (1994)(citing Rogers v. United States, 422 U.S. 35, 40 (1975).

> The principle that juries are not to consider the consequences of their verdicts is a reflection of the basic division of labor in our legal system between judge and jury. The jury's function is to find the facts and to decide whether, on those facts, the defendant is guilty of the crime charged. The judge, by contrast, imposes sentence on the defendant after the jury has arrived at a guilty verdict. Information regarding the consequences of a verdict is therefore irrelevant to the jury's task. Moreover, providing jurors sentencing information invites them to ponder matters that are not within their province, distracts them from their factfinding responsibilities, and creates a strong possibility of confusion.

Shannon v. United States, 512 U.S. at 579 (citing Rogers v. United States, 422 U.S. at 40; Pope v. United States, 298 F.2d 507, 508 (5th Cir. 1962)).  In her PFRD, Judge Molzen noted that the jurors were instructed not to be concerned with the consequences of the verdicts.  See PFRD at 15 (citing Record Proper at 229).

In his Petition, Gallegos argues that his counsel was ineffective in failing to seek a jury instruction concerning double jeopardy, because without the instructions, the jury did not make findings regarding which felony was the underlying felony for felony murder and he received separate sentences for felony murder and the felonies for which he was convicted.  Perhaps what

Gallegos is arguing is that his attorney should have secured a special verdict form asking the jury to identify for the court and for the parties what the predicate felony was for the felony-murder conviction, or that the jury instruction should have told the jury that they had to find a specific felony to find felony murder. There is a reasonable argument, however, that Gallegos' counsel satisfied Strickland's deferential standard. There is case law which states that information regarding the consequences of a jury's verdict is irrelevant to the jury's task. See Shannon v. United States, 512 U.S. at 579; Neely v. Newton, 149 F.3d 1074, 1085-86 (10th Cir. 1998)(affirming a district court's denial of a petitioner's petition for a writ of habeas corpus, and finding that the petitioner failed to show that the omission of a jury instruction regarding the consequences of the jury's verdicts denied her a fair trial or due process of law). It would be reasonable to conclude that a competent attorney would not seek an instruction regarding the consequences of the jury's verdict on Gallegos' sentence and attempt to sort out the felony murder at sentencing. Furthermore, it is reasonable to conclude a competent attorney would not think that there is an instruction on double jeopardy which he or she could seek. See Harrington v. Richter, 131 S. Ct. at 791 (finding that there were arguments that the petitioner's counsel was reasonably competent, from which it "would have been reasonable to find that [the petitioner] had not shown his attorney was deficient under Stickland"). Because there are reasonable grounds on which the state court could find that Gallegos failed to satisfy the first prong of the Strickland test, the Court need not analyze the second prong. See Cooks v. Ward, 165 F.3d 1283, 1292-93 (10th Cir. 1998)("This court may address the performance and prejudice components in any order, but need not address both if Mr. Cooks fails to make a sufficient showing of one." (citing Strickland v. Washington, 466 U.S. 668 at 697)). The Court thus adopts Judge Molzen's finding that Gallegos cannot secure federal habeas relief on the aspect of his ineffective-assistance-of-counsel claim.

In his Petition, Gallegos alleges that the district court sentenced him to life in prison for felony murder and imposed sentences for all the felonies for which the jury convicted him, and thus, one of the sentences for one of his felony conviction must be vacated. See Petition at 15. He alleges that the jury did not determine which felony was the predicate for felony murder and that the jury did no receive double-jeopardy instructions. See Petition at 15. Judge Molzen addressed this claim along with Gallegos' allegations regarding double jeopardy, which were contained in his ineffective-assistance-of-counsel claim. Although the Court believes that this claim is a separate double-jeopardy claim, the Court finds that it cannot grant the relief that Gallegos is requesting.

The Supreme Court has held that, in the multiple punishments context, the interest that the Double Jeopardy Clause protects is "limited to ensuring that the total punishment did not exceed that authorized by the legislature." Jones v. Thomas, 491 U.S. 376, 381 (1989)(quoting United States v. Halper, 490 U.S. 435, 450 (1989); other citations omitted). "The purpose is to ensure that sentencing courts do not exceed, by the device of multiple punishments, the limits prescribed by the legislative branch of government, in which lies the substantive power to define crimes and prescribe punishments." Jones v. Thomas, 491 U.S. at 381 (citation omitted). In State v. Frazier, 142 N.M. 120, 122, 164 P.3d 1, 3 (2007), the Supreme Court of New Mexico considered whether the legislature intended a defendant convicted of felony murder to receive punishment for both the felony murder and the underlying felony. See 142 N.M. at 122, 164 P.3d at 3. The Supreme Court of New Mexico has stated that, when the conduct underlying the offenses is unitary -- when the same conduct violates both statutes -- a defendant cannot be convicted of both felony murder and the underlying predicate felony. See State v. Frazier, 142 N.M. at 124, 164 P.3d at 5; State v. Contreras, 120 N.M. 486, 492, 903 P.2d 228, 234 (1995)(stating that allowing sentencing on the underlying predicate felony and the felony murder would impose multiple punishments in violation

of the Double Jeopardy Clause). The Supreme Court of New Mexico has stated that the language of the felony-murder statute and jury instruction regarding felony murder render "the conduct supporting the felony murder and the underlying predicate felony unitary by definition," because they expressly require "that the killing happen 'in the commission of' the underlying felony." State v. Frazier, 142 N.M. at 125, 164 P.3d at 6. "In the event the jury finds a defendant guilty of two crimes arising from the same offense, simply merging the two felonies post-conviction is not enough. Rather, the trial judge must explicitly vacate one of the convictions." State v. Garcia, 149 N.M. 185, ___, 246 P.3d 1057, 1069-70 (2011).

Gallegos was convicted for first degree murder (willful and deliberate), first degree murder (felony murder), two counts of kidnapping, two counts of aggravated burglary, armed robbery, aggravated battery, and tampering with evidence. The district court judge sentenced Gallegos to imprisonment for life for his conviction of first degree murder (willful and deliberate) and merged this sentence with Gallegos' sentence of imprisonment for life for first degree murder (felony murder). The district court judge also imposed a sentence for each of the felonies of which the jury convicted Gallegos. It appears that the district court's sentencing of Gallegos for both felony murder and all the felonies for which he was convicted may pose a double-jeopardy problem. In other words, the trial court maybe should have vacated the felony murder conviction and imposed only the first degree murder conviction, because it could not determine what felony was committed in the felony murder; merger may not cure the problem. In his Petition, however, Gallegos argues only that one of the felony sentences must be vacated, because one of the felony convictions is a predicate for the felony murder conviction. While the double-jeopardy issues are related, the issues are distinct and the relief differs, so much so that he has not raised the issue about which the Court is concerned. Nor does he ask that all the felonies but the murder conviction be vacated, which might

solve his problem. Again, his failure to present these double-jeopardy issues to the state, to Judge Molzen, or in his objections create problems for the Court now considering this on appeal. As Gallegos notes in his Petition, both in state court and in federal court, because the jury did not receive double-jeopardy instructions, they did not make a finding regarding which felony conviction was the underlying predicate offense for felony murder. It is impossible for the Court to grant Gallegos' requested relief, because it is impossible for it to ascertain which of the felony convictions served as the predicate felony for the felony murder conviction. Although it appears that Gallegos' convictions may pose a double-jeopardy problem the Court will not *sua sponte* grant relief that Gallegos did not request, to which the Respondents were not aware that they needed to respond, and that Judge Molzen was not aware she needed to address.

Gallegos did not make a broader request for relief in his state habeas petition; he argued only that the district court sentenced him to life in prison for felony murder and imposed sentences for all of his felony convictions and that one of the sentences for one of his felony convictions must be vacated, as one of the felonies is the predicate felony for the felony-murder conviction. The Court will not issue relief on a claim for relief which has not been exhausted. Cf. Gray v. Netherland, 518 U.S. 152, 162-63 (1996)("[F]or purposes of exhausting state remedies, a claim for relief in habeas corpus must include reference to a specific federal constitutional guarantee, as well as a statement of the facts that entitle the petitioner to relief."). In Ries v. Quarterman, 522 F.3d 517 (5th Cir. 2008), the United States Court of Appeals for the Fifth Circuit held that the petitioner's state habeas claim did not fairly present claims that he raised in his federal habeas petition to the state courts. See 522 F.3d at 524.

> The question here is whether Ries's state habeas claim -- that trial counsel was ineffective for failing to "effectively marshal" and to "present" mitigating evidence -- fairly presented to the state courts the substance of his federal habeas

> claims that trial counsel was ineffective for failing to introduce the case for mitigation at voir dire and for failing to adequately argue the case for mitigation in closing. Ries attempts to construe his vague state habeas claim as a broad challenge to trial counsel's treatment of the mitigation defense at trial, from start (voir dire) to finish (closing).
>
> The district court rejected Ries's effort to construe his state claim so broadly. Despite the broad language used in Ries's state habeas application, the district court concluded that the ineffectiveness challenge based on mitigation that Ries presented to the state courts was focused and specific: that his attorneys should have questioned witnesses more extensively and elicited more detailed testimony on the various exhibits admitted into evidence, which related to Ries's abusive and deprived upbringing. Because the district court concluded that Ries's state habeas claim focused on the actual introduction of mitigating evidence through documentary evidence and witness testimony, the district court reasoned that Ries's federal habeas claims predicated on counsel's alleged deficient handling of the mitigation defense at other stages of the trial, voir dire and closing, were not fairly presented to the state courts. We agree with the district court.
>
> . . . .
>
> Ries did not fairly present to the state courts the substance of his claim that trial counsel was ineffective in failing to explore the issue of mitigation during voir dire. Ries's state habeas application does not mention the issue of trial counsel's failure to discuss mitigation during voir dire; rather, the state application focuses specifically on the penalty phase of the trial. . . .  For these reasons, the substance of Ries's ineffective assistance claim based on trial counsels' failure to  voir dire on mitigation was not fairly presented to the state court. The district court thus correctly concluded that this claim was unexhausted and procedurally barred.

522 F.3d at 524-25.  See Smith v. Dretke, 422 F.3d 269, 275 (5th Cir. 2005)("The habeas applicant need not spell out each syllable of the claim before the state court to satisfy the exhaustion requirement, however, the petitioner cannot present new legal theories or new factual claims in his federal application." (citations omitted)). As in Ries v. Quarterman, where the Fifth Circuit found that the petitioner did not fairly present his ineffective assistance claim based on trial counsels' failure to voir dire on mitigation, because the challenge that the petitioner presented to the state courts was focused and specific to whether his attorneys should have questioned witnesses more extensively during another stage of the trial, in this case, Gallegos limited his arguments in his state

habeas petition to arguments regarding his sentencing. Moreover, any claims regarding his convictions would present new factual claims. Any claims Gallegos might have regarding his convictions are thus unexhausted, and the Court will not *sua sponte* grant relief on these unexhausted claims. See O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999)("Before a federal court may grant habeas relief to a state prisoner, the prisoner must exhaust his remedies in state court. In other words, the state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition."). The Court thus finds that, at this time, Gallegos cannot secure federal habeas relief on his double-jeopardy claim.

**IT IS ORDERED** that the Magistrate Judge's Proposed Findings and Recommended Disposition, filed March 7, 2011 (Doc. 15) are adopted, with the additional finding that Petitioner Ernest Gallegos cannot secure federal habeas relief on his double-jeopardy claim.

_____
UNITED STATES DISTRICT JUDGE

*Parties and counsel:*

Ernest Gallegos
Santa Rosa, New Mexico

    *Plaintiff pro se*

Gary K. King
  Attorney General for the State of New Mexico
Margaret E. McLean
  Assistant Attorney General
Santa Fe, New Mexico

    *Attorneys for the Defendants*